**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY _____ *AP* _____ D.C

**Sep 15, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 15, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  19-14353-JJ
Case Style: Alexander Johnson v. 27th Avenue Caraf, Inc.
District Court Docket No: 1:18-cv-24472-JEM
Secondary Case Number: 1:18-cv-24586-PCH

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

## UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

———————————

No. 19-14353

———————————

District Court Docket No.
1:18-cv-24472-JEM

1:18-cv-24472-JEM

ALEXANDER JOHNSON,

Plaintiff - Appellant,

SCOTT RICHARD DININ,

Interested Party - Appellant,

versus

27TH AVENUE CARAF, INC., d.b.a. Caraf Oil,

Defendant - Appellee.

-------------------------------------------------------
1:18-cv-24586-PCH

ALEXANDER JOHNSON,

Plaintiff,

SCOTT RICHARD DININ,

Interested Party - Appellant,

versus

OCARIS MANAGEMENT GROUP, INC.,
d.b.a. U-Gas East Flagler,

Defendant - Appellee.

---

Appeals from the United States District Court for the
Southern District of Florida

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: August 17, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 19-14353, 19-14354

_____

D.C. Docket No. 1:18-cv-24472-JEM

ALEXANDER JOHNSON,

Plaintiff - Appellant,

SCOTT RICHARD DININ,

Interested Party - Appellant,

versus

27TH AVENUE CARAF, INC., d.b.a. Caraf Oil,

Defendant - Appellee.

--------------------------------------------------

D.C. Docket No. 1:18-cv-24586-PCH

ALEXANDER JOHNSON,

Plaintiff,

SCOTT RICHARD DININ,

Interested Party - Appellant,

versus

OCARIS MANAGEMENT GROUP, INC.,
d.b.a. U-Gas East Flagler,

Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 17, 2021)

Before MARTIN, ROSENBAUM, and LUCK, Circuit Judges.

MARTIN, Circuit Judge:

This consolidated appeal asks us to review the time-consuming and detailed

inquiry undertaken by the District Court into the actions of a litigant who filed

lawsuits purporting to advance disability rights.  As a result of his investigation,

the judge came to believe that the overriding purpose of these disability lawsuits

was to collect payments in an unethical fee-sharing arrangement between the

litigant and the lawyer who represented him.  Specifically, this is the appeal from

two lawsuits filed by Alexander Johnson against gas station owners in the Southern

District of Florida.  Mr. Johnson is hearing impaired and filed a two-count

complaint against 27th Avenue Caraf, Inc., d/b/a Caraf Oil, asserting that it failed

to provide closed captioning or a similar capability that would allow him to

comprehend the television media features on gasoline pumps.  Mr. Johnson alleged

that this failure to provide access to the hearing impaired violated Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") as well as

the Florida Civil Rights Act, Fla. Stat. § 760.08 ("FCRA").  Less than a week after

filing his suit against Caraf Oil, Mr. Johnson filed a nearly identical two-count

complaint against Ocaris Management Group Inc., d/b/a U-Gas East Flagler,

raising the same allegations.  We refer to Mr. Johnson's case against 27th Avenue

Caraf as "Caraf" and to his case against Ocaris Management Group as "Ocaris."[1]

These were not Mr. Johnson's only cases.  Indeed, there were 26 identical

cases brought by Johnson in the Southern District of Florida against gas station

owners located throughout Miami-Dade and Broward counties.  They all

complained of the failure to provide closed captions in the videos that played at gas

pumps, and Scott Dinin represented Mr. Johnson in each of these 26 cases.  After

holding hearings and reviewing documents relating to the 26 cases, the District

Court found that Mr. Johnson and Mr. Dinin were running an illicit joint

enterprise, consisting of filing frivolous claims, knowingly misrepresenting the

time they counted as billable, making misrepresentations to the court, and

improperly sharing attorney's fees.  The District Court imposed sanctions against

---

[1] Caraf was originally assigned to the Honorable Jose E. Martinez and Ocaris was assigned to the
Honorable Paul C. Huck.  Mr. Johnson filed a motion to consolidate the show cause hearings for
sanctions, which was granted.  As a result, Judge Huck held a consolidated hearing on the issue
of sanctions, though the cases themselves were not consolidated.

both Mr. Johnson and Mr. Dinin, including monetary penalties, community service, and an injunction prohibiting them from filing future ADA claims without approval.

Mr. Johnson and Mr. Dinin both appealed.  After careful consideration, and with the benefit of oral argument, we conclude Mr. Dinin lacks standing and dismiss his appeal for lack of subject matter jurisdiction.  As for Mr. Johnson, we affirm the sanctions imposed against him in full.

## I.    BACKGROUND

On May 9, 2019, the District Court held an evidentiary hearing on Mr. Johnson's Motion for Entry of Final Default Judgment in the Ocaris case.  The District Court explained at the hearing that, in the course of evaluating that motion, it found what it characterized as "red flag[s]" associated with Mr. Johnson and Mr. Dinin's litigation.  Based on its "serious concerns," the District Court undertook a thorough review of the record in the Ocaris case as well as those of similar lawsuits filed by Mr. Johnson and Mr. Dinin.  As a result of its review, the court made several findings.  It found that Mr. Johnson and Mr. Dinin filed claims for damages under the FCRA that they both knew to be frivolous, because Mr. Johnson had failed to exhaust his administrative remedies as required by the statute.  The court also found that Mr. Dinin had, for billing purposes, egregiously inflated and misrepresented the amount of time he'd devoted to both the Ocaris and Caraf

cases.  The District Court detailed its findings in a May 30, 2019, Order ("Show

Cause Order") that denied the Motion for Default Judgment.  The court also

ordered Mr. Johnson and Mr. Dinin to appear at an evidentiary hearing to show

cause why sanctions should not be imposed against them pursuant to Federal Rule

of Civil Procedure 11(c) and the court's inherent power.

The Show Cause Order also required Mr. Johnson and Mr. Dinin to produce

various documents (including, as relevant here, emails exchanged between Johnson

and Dinin as well as settlement agreements and settlement statements, that is,

statements summarizing those agreements) from the gas pump cases as well as a

sampling of their other ADA cases.[2]  The court then held a show cause hearing on

July 22, 2019, where both Mr. Johnson and Mr. Dinin appeared with their

attorneys.  The District Court determined at the hearing that sanctions were

warranted.  We now detail the court's findings underlying the sanctions order as

well as the sanctions imposed.

**A. Findings of Bad Faith**

1. <u>Mr. Johnson and Mr. Dinin Continuously Filed Frivolous FCRA Claims</u>

The FCRA provides a personal cause of action resulting from discrimination

based on "handicap."  Fla. Stat. §§ 760.01–.11.  However, the FCRA expressly

---

[2] The District Court found that Mr. Dinin had filed 653 ADA cases from November 2013 to March 2019 with Mr. Johnson as the plaintiff in 131 of them.

requires that, prior to bringing a claim under that statute, plaintiffs file a complaint with the Florida Commission on Human Relations and follow certain administrative pre-suit requirements. See Fla. Stat. §§ 760.07, 760.11. Mr. Johnson did not allege that he exhausted his administrative remedies in any of the 26 gas pump cases, despite bringing FCRA claims in every case. At the May 9 hearing Mr. Dinin admitted that indeed Mr. Johnson had not exhausted his administrative remedies in any of those cases. The court noted that since at least 2014, whenever Mr. Johnson's FCRA claims were challenged on the basis of failure to exhaust administrative remedies, those claims had been dismissed. In some instances, the FCRA claims were dismissed by the court in which they were asserted, and sometimes Mr. Johnson voluntarily dismissed them. The District Court found that Mr. Johnson and Mr. Dinin's "deliberate and continuous assertion of these frivolous FCRA claims not only wastes the Court's time and defendants' resources, but also constitutes a blatant abuse of the judicial system well beyond Rule 11's prohibitions."

    2. Mr. Dinin Systematically Inflated His Billing

The District Court found that in both the Ocaris and Caraf cases, and other ADA cases as well, Mr. Dinin "egregiously inflated his attorney's fees claims by overbilling for simple, repetitive tasks and by billing for work which he did not perform." For instance, although the complaints in the 26 gas pump suits are

identical except for the defendant's name, the location of the station, and the dates on which Mr. Johnson visited the station, Mr. Dinin attributed 3.5 hours at $500 per hour to drafting the complaint in the <u>Caraf</u> case.  And the <u>Caraf</u> complaint was filed after those filed in numerous other gas pump cases.  Mr. Dinin also billed at his higher hourly rate as a lawyer for work actually performed by paralegals, such as conducting searches on Pacer and e-filing.  And emails between Mr. Johnson and Mr. Dinin revealed that Dinin billed 1.5 hours to "finalize client revisions" to a proposed draft complaint even though Johnson only asked for three de minimis changes—correcting a typographical error and minimally rewording two sentences. These are only a few examples of the gross overbilling practices uncovered by the District Court, which it found to be "systemic."

    3.  <u>Mr. Johnson and Mr. Dinin Were Motivated by Obtaining Fees for Themselves</u>

The District Court found that Mr. Johnson and Mr. Dinin's purported goals of remediating discrimination faced by people with disabilities were not "sincere." More to the point, it found that, despite proclaiming a desire to help the hearing-impaired community by obtaining closed caption capabilities on gas pump videos, Mr. Johnson and Mr. Dinin repeatedly engaged in what the court described as "self-dealing" behavior that failed to further any protections for the hearing-impaired community.  Notably, the majority of the settlement agreements from the gas pump cases provided no remedial relief whatsoever.  Instead, they resulted

only in payment of Mr. Johnson's legal fees and costs along with a dismissal with prejudice.  And in other settlements the remedial relief (in addition to costs and fees) was not actually providing closed captioning to the videos, but simply turning off the videos at the gas pumps entirely.

The District Court noted that an email produced by Mr. Dinin further supported its finding that Dinin and Mr. Johnson were motivated by monetary payment alone.  In this email from October 2018, which we refer to as the "sabotage email," Mr. Johnson instructed Mr. Dinin to "remove" from the draft of a proposed complaint a sentence that read, "Defendant's representative did not turn off the television media feature within the gas pump to prevent further discrimination."  In explaining why, Mr. Johnson stated bluntly that deleting the sentence from the complaint would help avoid giving other gas stations ideas for how to answer their lawsuits, writing, "[W]e do not need to sabotage our other cases by providing defendants a defense by giving them a partial remedy and answer to our complaints."  According to the District Court, this email supported its finding that "because these gas pump cases were so profitable for Johnson and Dinin, they did not want to 'sabotage' them by advising the gas station owners that they can easily avoid ADA liability by simply turning off the videos."  In other words, the motivation was to obtain payment of legal fees, as opposed to compliance with the ADA.

### 4. Mr. Dinin Shared Fees with Mr. Johnson

The District Court also found that Mr. Dinin impermissibly shared his inflated legal fees with Mr. Johnson, generally on a 50-50 split.  The District Court uncovered this "long-standing" and "unethical" "fee-sharing arrangement" in reviewing settlement statements between Mr. Dinin and Mr. Johnson and related checks payable to Johnson.  At the show cause hearing, Mr. Johnson and Mr. Dinin's attorneys admitted that Johnson and Dinin split fees in this way.  This constitutes a "serious ethical transgression" in violation of the Rules Regulating the Florida Bar.

## B. Sanctions Imposed

### 1. Initial Sanctions

On August 23, 2019, the District Court entered its Order Imposing Sanctions.  The court explained that under Rule 11 and pursuant to its inherent power, it has authority to impose sanctions against Mr. Johnson and Mr. Dinin based on their pattern of unethical, bad faith conduct.  It found that Mr. Johnson and Mr. Dinin engaged in "an illicit joint enterprise . . . to dishonestly line their pockets with attorney's fees from hapless defendants under the sanctimonious guise of serving the interests of the disabled community."  The court then imposed both monetary and non-monetary sanctions.  Specifically, the District Court:

- Dismissed with prejudice the ADA and FCRA claims in the <u>Ocaris</u> and
  <u>Caraf</u> cases and denied Mr. Johnson's claim for attorney's fees and costs.

- Ordered Mr. Johnson and Mr. Dinin to disgorge improperly obtained
  settlement funds from the gas pump cases.

- Ordered Mr. Johnson and Mr. Dinin to each pay an additional penalty of
  $59,900.00 to Disability Independence Group, a local non-profit dedicated
  to the rights of people with disabilities, or to the Clerk of the Court.  Because
  Mr. Johnson told the court he was unable to pay any substantial penalty, the
  court also provided an alternative, non-monetary sanction: 400 hours of
  community service with the Disability Independence Group or another
  similar entity subject to the court's approval.

- Enjoined Mr. Johnson and Mr. Dinin from filing any future ADA complaints
  without first obtaining the court's written permission.  If any court allows
  them to file ADA complaints, Mr. Johnson and Mr. Dinin must file a copy of
  the sanctions Order with their complaints.

- Referred Mr. Dinin to the Florida Bar and a separate Southern District of
  Florida committee for investigation of his actions in the gas pump cases.

2.  <u>Modifications</u>

Shortly after the entry of sanctions, Mr. Johnson filed a Motion for Partial
Stay Pending Appeal.  During the hearing on this motion, the court asked Mr.

Johnson whether he would like to do community service or pay the fine and Johnson insisted that he should not have to do either.  At this hearing, the court learned that Mr. Dinin had paid "100 percent" of the disgorgement funds due.

After considering additional argument, the District Court determined the sanctions would be modified as to Mr. Johnson and reduced the penalty to $6,000 and ordered that he also complete 50 hours of community service annually for three years.

This is Mr. Johnson and Mr. Dinin's consolidated appeal.  We appointed amicus to represent the position in response to Mr. Johnson and Mr. Dinin's arguments.  We first address Mr. Dinin's appeal and then turn to Mr. Johnson's.

## II.    STANDARDS OF REVIEW

We review a district court's imposition of sanctions under Rule 11 or pursuant to its inherent power for an abuse of discretion.  Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc) (discussing Rule 11); Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S. Ct. 2123, 2138 (1991) (discussing inherent power).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision upon findings of fact that are clearly erroneous." Peer v. Lewis, 606 F.3d 1306, 1311 (11th Cir. 2010) (quotation marks omitted).

We review evidentiary rulings for an abuse of discretion, or for plain error where a party fails to preserve its objection.  United States v. Edouard, 485 F.3d 1324, 1343 (11th Cir. 2007).

### III.   MR. DININ'S APPEAL

On appeal, Mr. Dinin does not challenge the sanctions imposed against him but instead challenges only the District Court's ruling on the merits of the ADA claim.  Appointed amicus counsel says Mr. Dinin lacks standing to appeal.  We agree that Mr. Dinin does not have standing, and we dismiss his appeal for lack of subject matter jurisdiction.

Mr. Dinin's appeal challenges the dismissal of the ADA claim.  He asks us to "reverse the District Court finding that the gas pump cases were not a violation under the ADA."  But the ADA claim was brought by Mr. Johnson.  Mr. Dinin simply acted as Mr. Johnson's attorney in bringing the cause of action.  Now in this appeal, Mr. Dinin represents only himself, through his own attorney, while Mr. Johnson pursues a separate appeal and is represented by his separate counsel.  Thus Mr. Dinin's appeal asks us to reverse findings made about a cause of action brought by someone else.  Mr. Dinin lacks standing to make this request.

To establish standing, Mr. Dinin must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins,

578 U.S. 856, 136 S. Ct. 1540, 1547 (2016).  Mr. Dinin says he has met these requirements because "[t]he fact that the trial court found he had filed frivolous ADA claims has resulted in reputational damage that is directly traced to the trial court's ruling and a favorable ruling by this Court would redress those reputational injuries[.]"  But Mr. Dinin cites to no law establishing that possible reputational damage to a lawyer based on a claim filed on behalf of a client constitutes an injury in fact.  Nor could we find any support in the caselaw.  And for good reason.  In our adversarial system, lawyers represent their clients and are not themselves participants in the litigation.  Decisions on the merits of claims address the client's claims—not the lawyer's.  If every dismissal of a lawsuit on grounds of frivolity gave plaintiff's counsel standing to appeal, appellate courts would be tasked with twice the work, even where, as here, the lawyer lacks any independent leg to stand on.  Cf. Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 926 (11th Cir. 2020) (en banc) (listing examples of intangible and tangible harms that can establish injury in fact, including "physical injury or financial loss").

Because Mr. Dinin has not shown how he has suffered an injury in fact, he lacks standing to appeal.  We dismiss his appeal for lack of subject matter jurisdiction.

## IV.   MR. JOHNSON'S APPEAL

Mr. Johnson challenges the sanctions imposed upon him on several grounds. We discuss each in turn.

### A. Notice and Opportunity to Be Heard

Mr. Johnson says the District Court failed to afford him proper notice before imposing sanctions.  He says the May 9 hearing on his pending default judgment motion was turned into a "de facto sanctions hearing" and the District Court did not notify Mr. Johnson in advance that it would be considering sanctions.

"Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why."  In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995).  The District Court met these notice requirements here.  Our review of the record does not entirely support Mr. Johnson's characterization of the May 9 hearing on the default judgment motion as a de facto sanctions hearing. The District Court did not impose sanctions during the May 9 hearing or in its subsequent Show Cause Order.  During the May 9 hearing, the District Court provided notice regarding the possibility of future sanctions and the reasons underlying that possibility:

> I'm going to set this case down on a rule to show cause why sanctions shouldn't be entered against you and your client for things that I've discussed here today.
>
> One[:] continually filing [claims] under the Florida Civil Rights Act, when you know that they have been dismissed either by the Court or

voluntarily dismissing those because there's been no exhaustion of
administrative remedies . . . .

And second[:] show cause why I shouldn't sanction you for what I
consider to be grossly overbilling for this case.

And in the Show Cause Order, the court again gave notice of the show cause

hearing and reasons for potential sanctions.

This notice complies with what our precedent requires.  This Court has said

that an attorney or party "should be given early notice that his or her conduct may

warrant Rule 11 sanctions."  Donaldson, 819 F.2d at 1560.  And here the District

Court's order to show cause gave Mr. Johnson ample notice of its intention to

determine whether sanctions should be imposed, as well as the court's bases for

concern.  We view this notice as more than "fair."  Mroz, 65 F.3d at 1575.

Of course, the accused must also be given "an opportunity to respond, orally

or in writing as may be appropriate, to the invocation of Rule 11 and to justify his

or her actions."  Donaldson, 819 F.2d at 1560.  The District Court provided such an

opportunity here.  Mr. Johnson was invited to file, and in fact did file, a brief

opposing the imposition of sanctions and he testified at the show cause hearing.

The District Court did not fail to provide proper notice and opportunity for Mr.

Johnson to be heard prior to imposing sanctions.

## B.  Referral to Magistrate Judge or Special Master

Mr. Johnson argues the District Court abused its discretion and failed to afford him due process because it refused to refer the show cause matter to a magistrate judge or special master to resolve legal and factual issues.  But this type of referral is not required, so we reject this argument.  The Southern District of Florida's Local Rules are entirely permissive with respect to assignment of matters to magistrate judges.  See, e.g., S.D. Fla. L.R., Mag. J. R. 2 ("Nothing in these Magistrate Judge Rules shall preclude a District Judge from reserving any proceeding for conduct by a District Judge rather than a Magistrate Judge.").  And the same is true of 28 U.S.C. § 636, the federal statute governing the authority of magistrate judges.  See, e.g., 28 U.S.C. § 636(b)(2) ("A judge may designate a magistrate judge to serve as a special master in any civil case . . . .") (emphasis added)).  The District Court therefore did not err by refusing to refer the show cause matter to a magistrate judge or special master.

## C. The District Court's Investigation

We understand Mr. Johnson to challenge the scope of the District Court's investigation.  Specifically, we read his brief to challenge the District Court order requiring the production of certain emails between Mr. Johnson and Mr. Dinin (most importantly, the "sabotage email"), as well as various settlement agreements.  These challenges fail.

To begin, the District Court did not commit reversible error when it ordered production of the "sabotage email."[3]  The District Court ordered Mr. Johnson and Mr. Dinin to produce various documents, including "[e]mails exchanged between Johnson and Dinin" regarding the process of drafting their complaints.  In response to this order, Mr. Johnson produced three emails he sent to Mr. Dinin, but he produced them with a stipulation that he was waiving the attorney-client privilege "as to these documents only."  After Mr. Johnson's three-email production, Mr. Dinin produced more emails including, as relevant here, the "sabotage email."  The District Court relied heavily on this email as evidence of Mr. Johnson's personal involvement in the unethical fee-splitting scheme.

Mr. Johnson now argues the District Court violated attorney-client privilege by admitting and relying on the "sabotage email."  Although Mr. Johnson claims the District Court admitted the email over his objection, he does not point us to anywhere in the record where the objection was made.  Our read of the record is that Mr. Johnson merely objected to the admission of his tax returns and the settlement agreements from other gas pump cases.  We therefore review this claim

---

[3] To be clear, we are referring to the email in which Mr. Johnson asked Mr. Dinin to remove language from the Caraf complaint asking to turn off the gas pump videos because it would "sabotage our other cases by providing defendants a defense by giving them a partial remedy in answer to our complaints."

for plain error. <u>Edouard</u>, 485 F.3d at 1343.  If any error was committed on this claim, it was not plain.

The attorney-client privilege "protects disclosures made by a client to his attorney, in confidence, for the purpose of securing legal advice or assistance." <u>Knox v. Roper Pump Co.</u>, 957 F.3d 1237, 1248 (11th Cir. 2020).  Emails from Mr. Johnson to Mr. Dinin regarding the content of a complaint fall clearly within this protection.  But the question of whether the privilege was waived is more difficult.  The attorney-client privilege "belongs solely to the client," who may waive it either "expressly or by implication."  <u>Id.</u> (quotation marks omitted).  So only Mr. Johnson—not Mr. Dinin—could waive the privilege.

Selective disclosure for tactical purposes waives the privilege.  <u>See</u> <u>Cox v. Admin'r U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1417 (11th Cir. 1994).  As set out above, Mr. Johnson disclosed three emails exchanged between himself and Mr. Dinin.  Thus, the question is whether or not that disclosure waived the privilege with respect to their other correspondence—including the "sabotage email."  The rule that selective disclosure waives the privilege comes from the idea that the attorney-client privilege is "a shield, not a sword," meaning that a party "may not use the privilege to prejudice his opponent's case" by preventing the disclosure of damaging communications while "disclos[ing] some selected communications for self-serving purposes."  <u>Id.</u> (quotation marks omitted).  Here, Mr. Johnson did not

disclose the three emails because they were self-serving; he disclosed them because the District Court ordered him to.  These facts are not directly addressed by the selective disclosure rule.

Unless the explicit language of a statute or rule resolves an issue, "there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  United States v. Hesser, 800 F.3d 1310, 1325 (11th Cir. 2015) (per curiam) (quotation marks omitted).  Because there is no statute or precedent directly resolving questions of privilege where a court ordered selective production of attorney-client communications, the District Court did not plainly err.

To the extent Mr. Johnson also challenges the District Court's order to produce various settlement agreements and settlement statements, we find no reversible error as to those documents either.  Here, the District Court was faced with clear indications that Mr. Johnson and Mr. Dinin knowingly filed frivolous suits to extort settlements and monetary payments from defendants while abusing judicial resources in the process.  Under these circumstances, the court acted within its discretion when it ordered production of settlement agreements from similar cases brought by these men.  The court has the inherent power to investigate the scope and extent of this scheme that it deemed to threaten the integrity of the court.  Cf. Cox, 17 F.3d at 1416 (explaining that testimony

19

protected by the attorney-client privilege may be compelled under certain

exceptions concerning fraud perpetrated with the assistance of counsel).  In our

view, the District Court's actions were in keeping with its inherent power to

"fashion an appropriate sanction for conduct which abuses the judicial process."

Chambers, 501 U.S. at 44–45, 111 S. Ct. at 2133.

### D. Authority to Impose Sanctions

The District Court asserted its authority to impose sanctions against Mr.

Johnson pursuant to both Federal Rule of Civil Procedure 11(b)[4] as well as the

court's inherent power.  Rule 11 sanctions are warranted "when a party files a

pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that

has no reasonable chance of success and that cannot be advanced as a reasonable

argument to change existing law; and (3) is filed in bad faith for an improper

---

[4] Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1)  it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

purpose."  Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998).  And courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process."  Chambers, 501 U.S. at 44–45, 111 S. Ct. at 2133.  A court may exercise this power "to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Purchasing Power, LLC v. Bluestem Brands, Inc., 851 F.3d 1218, 1223 (11th Cir. 2017) (quotation marks omitted).  This power is "unlock[ed]" only upon a finding of bad faith.  Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998).  "A finding of bad faith is warranted where," among other things, "a frivolous argument" is "knowingly or recklessly raise[d]."  Id. (quotation marks omitted).  It is true, as Mr. Johnson conceded during the show cause hearing, that a judge has the power to investigate conduct that affects the integrity of the court.  See Chambers, 501 U.S. at 44, 111 S. Ct. at 2132.

Mr. Johnson nevertheless challenges the District Court's authority to impose sanctions against him for two reasons.  First, he says the evidence did not support the court's finding that he acted in bad faith.  Second, he says sanctions against him are inappropriate because he is merely the client.  Both arguments fail.

The evidence fully supports the District Court's finding that Mr. Johnson acted in bad faith.  Mr. Johnson affirmatively instructed Mr. Dinin to remove language from the complaint alleging that the Defendant had not turned off the

video on the gas pump to prevent further discrimination, because "we do not need to <u>sabotage</u> our other cases by providing defendants a defense by giving them a partial remedy and answer to our complaints."  The District Court found this to show that Mr. Johnson was driven by fees he and Mr. Dinin could collect rather than by a desire to remove barriers to access for people who are hearing impaired. Mr. Johnson was instructing Mr. Dinin to remove language from the complaint that could have alerted Defendants to a way to equalize everyone's experience at gas pumps, without any apparent concern that shutting off the videos does nothing for the hearing impaired who may have desired to watch the videos with captioning. Also damning, the District Court found the following: (1) The majority of the settlements entered into by Mr. Johnson and Mr. Dinin provided no remedial relief, but instead simply paid Johnson's legal fees; (2) Johnson and Dinin generally split the legal fees 50-50; (3) Johnson had known about the FCRA's administrative exhaustion requirement since at least 2014 but continued to file lawsuits alleging FCRA claims without exhausting his administrative remedies.[5]

---

[5] On appeal, Mr. Johnson denies acting in bad faith with respect to the FCRA claims and argues the filing of those claims was purely Mr. Dinin's decision.  But the record contains sufficient evidence to support a finding that Mr. Johnson was aware the FCRA claims were frivolous.  For example, the District Court found that Mr. Johnson's FCRA claims had been repeatedly dismissed for failure to exhaust, yet he continued to file those claims without exhausting them administratively.  And Mr. Johnson signed the Verified Complaints, which "sends a message to the district court that this document is to be taken seriously."  <u>Business Guides, Inc. v. Chromatic Commc'ns. Enters., Inc.</u>, 498 U.S. 533, 546, 111 S. Ct. 922, 930 (1991).

Neither was it improper for the District Court to impose sanctions against Mr. Johnson because he was the client and not the attorney. Rule 11 explicitly contemplates imposition of sanctions against a party: "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added). And where the client has made a "knowing factual misrepresentation" or is the "mastermind" behind the frivolous case, sanctions against a client are appropriate. Byrne v. Nezhat, 261 F.3d 1075, 1118 (11th Cir. 2001) (quotation marks omitted), abrogated on other grounds as recognized by Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1357 n.10 (11th Cir. 2018). The District Court found that Mr. Johnson misrepresented the regularity with which he visited the gas stations in question and continually filed FCRA claims he knew to be frivolous. And again, the "sabotage email" clearly supports the finding that Mr. Johnson played the role of the "mastermind" behind the frivolous cases.

### E. Sanctions Imposed

The District Court imposed the following sanctions against Mr. Johnson: (1) Dismissal with prejudice of the two cases before it (Ocaris and Caraf) and denial of attorney's fees and costs; (2) Disgorgement of all fees and costs in each of the 26 gas pump cases; (3) Payment of a monetary fine or community service; (4)

Enjoining filing any ADA complaint in any federal or state court "without first obtaining written permission" from the District Court.  We discuss each in turn.

1. Dismissal of Claims with Prejudice

The District Court acted pursuant to Rule 11 and its inherent authority when it dismissed Mr. Johnson's claims with prejudice as a sanction for his bad faith conduct.  The District Court found that dismissal with prejudice was warranted based on Mr. Johnson's collusion with Mr. Dinin in continuing to file claims seeking damages under the FCRA, when they knew Johnson had not properly exhausted his administrative claims as required by the statute.[6]  The District Court also justified its dismissal based on Mr. Johnson and Mr. Dinin's scheme to profit by filing ADA claims, as opposed to seeking meaningful relief for the hearing impaired.  On this record, we affirm the District Court's sanction of dismissal.[7]

2. Disgorgement

Mr. Johnson asserts that "the district court violated its own operating procedures by . . . requiring the disgorgement of fees paid to Mr. Dinin in those

---

[6] Mr. Johnson does not challenge the dismissal of his FCRA claims, nor could he.  The FCRA claims were frivolous and thus dismissal was appropriate.

[7] While we hold that the sanction of dismissal of Mr. Johnson's ADA claim is justified on this record, we reject the District Court's ruling to the extent it also dismissed Johnson's ADA claim for lack of standing.  In order to establish standing to bring the ADA claim he made here, Mr. Johnson was not required to show his definite intention to visit a specific gas station in the future.  Gas stations are visited on an as-needed basis, often based on convenience, proximity, or price on a given day.  And importantly, cars are mobile and must be serviced wherever they happen to be at the time gas is needed.  Gas stations are therefore different from supermarkets,

cases where no such disgorgement was ordered by the other judges." Yet any

appeal of the disgorgement sanction is moot. Mr. Dinin paid the disgorgement

sanction in full, and "[w]e have long recognized that the payment of a civil fine . . .

renders moot any appeal of the sanction." <u>RES-GA Cobblestone, LLC v. Blake</u>

<u>Constr. and Dev., LLC</u>, 718 F.3d 1308, 1315 (11th Cir. 2013).

3. <u>Monetary Penalty and Community Service</u>

The District Court ultimately ordered that Mr. Johnson pay a penalty of

$6,000 to Disability Independence Group, a local non-profit dedicated to the rights

of people with disabilities, or to the Clerk of the Court. Also, Mr. Johnson was

ordered to perform 50 hours of community service annually for three years for the

Disability Independence Group or a similar group subject to the court's approval.

Again here, the court was well within its discretion to do so.

Although Rule 11 neither expressly authorizes nor expressly forbids

monetary sanctions, this Court has recognized that "[i]mposing a financial penalty

often will be the most effective and fair means of enforcing Rule 11 and deterring

---

which are more typically visited closer to home based on set habits and routines, and other
destination-type establishments like hotels, hospitals, or restaurants. Cf., e.g., <u>Houston v. Marod</u>
<u>Supermarkets, Inc.</u>, 733 F.3d 1323, 1326, 1336 (11th Cir. 2013) (requiring plaintiff alleging
ADA violation at supermarket to demonstrate he intended to return to the specific supermarket in
order to establish standing); <u>Kennedy v. Floridian Hotel, Inc.</u>, 998 F.3d 1221, 1233–34 (11th Cir.
2021) (same for hotels). In bringing this case, Mr. Johnson needed only to show that he
regularly travels in the vicinity of the particular gas station, and he made that showing here. For
instance, he regularly travels to a pharmacy near the gas station identified in the <u>Ocaris</u> case to
pick up medicine for his partner. Other gas stations he identified are close to the Miami Zoo,
where he has a membership.

baseless suits." <u>Donaldson</u>, 819 F.2d at 1557.  For that reason, monetary sanctions may be imposed so long as they are imposed in accordance with due process.[8]  <u>Id.</u> at 1557–58.

The District Court complied with the necessary requirements here.  The court provided notice and allowed Mr. Johnson to brief and present arguments relating to sanctions.  The court even substantially reduced the financial penalty from $59,900 to $6,000 after it gave further consideration to Mr. Johnson's financial circumstances.  The court also tailored the penalty to the violation by ordering that it be paid (as one option) to a non-profit organization that serves people with disabilities.  <u>See</u> <u>Donaldson</u>, 819 F.2d at 1557 ("[The court] has discretion to tailor sanctions to the particular facts of the case[.]" (quotation marks omitted)).  And the District Court carefully considered whether a financial penalty was warranted.  The court found a financial penalty was warranted because: (1) Mr. Johnson showed "less remorse or contriteness or accepting responsibility . . . as compared to Mr. Dinin"; (2) while Johnson "received approximately 50 percent of the fees that are in question . . . he has not paid any of the disgorgement funds"; and (3) "Johnson is not subject to potential disciplinary action as is Mr. Dinin." This careful consideration, adherence to proper procedure, and attention to Mr.

---

[8] Mr. Johnson asserts that monetary sanctions may be imposed only against the lawyer, not the client.  However, the case he cites for that proposition allows sanctions to be imposed against clients in certain circumstances.  <u>See</u> <u>Byrne</u>, 261 F.3d at 1117–18.

Johnson's financial circumstances reveal a District Court acting within its discretion.

Neither did the District Court abuse its discretion by ordering Mr. Johnson to perform 50 hours of community service annually for three years for a non-profit that serves people with disabilities. "The type and the amount of sanction imposed calls for the proper exercise of a district court's discretion." Aetna Ins. Co. v. Meeker, 953 F.2d 1328, 1334 (11th Cir. 1992). Although this doesn't appear to be a usual sanction, Rule 11 does not prohibit community service. To the contrary, it expressly permits sanctions with an intended restorative purpose such as "participation in seminars or other educational programs." Fed. R. Civ. P. 11, Adv. Cmt. Note, 1993 Amend., (b)–(c). In our view, requiring Mr. Johnson to perform community service is akin to requiring that he participate in an educational program, but with the added (and tailored) benefit of serving the disabled community. This is the very community the District Court found Mr. Johnson to have harmed. Thus, the court tailored a sanction directly responsive to the harm caused by Mr. Johnson's bad faith conduct. And Mr. Johnson made no argument that he was unable to comply with community service for reasons relating to his health, economic hardship, family obligations, or other personal considerations.

4. <u>Injunction</u>

The District Court enjoined Mr. Johnson and Mr. Dinin from filing any future ADA complaints without first obtaining written permission from the court. It further directed Mr. Johnson and Mr. Dinin to include a copy of the sanctions order along with any future ADA complaint.  We find no abuse of discretion here.

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." <u>Procup v. Strickland</u>, 792 F.2d 1069, 1073 (11th Cir. 1986) (en banc) (per curiam).  Thus, federal courts can protect their dockets from abuse by frequent filers so long as the measures taken are a reasonable response to the abuse and access to the courts is not entirely foreclosed.  <u>See</u> <u>Cofield v. Ala. Public Serv. Comm'n</u>, 936 F.2d 512, 517–18 (11th Cir. 1991) (discussing "prefiling screening" in the <u>in forma pauperis</u> context "when the litigator has assets").  Indeed, "as long as <u>some</u> access to the courts is allowed," federal courts have considerable discretion to restrict filings of litigants who continuously bring frivolous suits that abuse the judicial process.  <u>Id.</u> at 518 (emphasis added); <u>see also</u> <u>Traylor v. City of Atlanta</u>, 805 F.2d 1420, 1421 (11th Cir. 1986) (per curiam) ("[A] district court has considerable discretion in restricting the filing[] of" "patently frivolous lawsuits[.]"); <u>Procup</u>, 792 F.2d at 1074 (holding that an abusive litigant may be "severely restricted as to what he

may file and how he must behave in his applications for judicial relief. He just cannot be completely foreclosed from <u>any</u> access to the court"). Prefiling orders are a common way to restrict such filings while still allowing access to the courts. <u>See, e.g.</u>, <u>In re McDonald</u>, 489 U.S. 180, 184, 109 S. Ct. 993, 996 (1989) (per curiam) (barring frequent litigant from bringing further petitions for extraordinary writs unless he meets certain requirements).

The District Court found that Mr. Johnson is a "serial ADA case filer," having filed in the Southern District of Florida alone 26 gas pump complaints and 131 ADA complaints total in a five-year period. In the majority of these cases, Mr. Johnson did not actually seek injunctive relief fixing the accessibility problem, but instead sought only payment of legal fees which he split with his lawyer. Mr. Johnson never stopped filing claims for damages pursuant to the FCRA, although he knew them to be objectively frivolous since he had not exhausted his administrative remedies. Imposing a pre-filing requirement is a reasonable response to this type of conduct. And it is important that Mr. Johnson is not completely denied access to the courts. He is simply required to obtain permission before filing any ADA complaint. We therefore affirm the injunction.

## V.    CONCLUSION

For these reasons, we **DISMISS** Mr. Dinin's appeal for lack of subject

matter jurisdiction and **AFFIRM** the sanctions against Mr. Johnson.

LUCK, Circuit Judge, concurring in part and concurring in the judgment:

I join all of the majority opinion except for footnote seven.  In footnote seven, the majority opinion says that it rejects the sanction of dismissal to the extent the district court dismissed Alexander Johnson's Americans with Disabilities Act claims for lack of standing because Johnson wasn't required to show his definite intention to visit a specific gas station in the future.  Johnson, the majority opinion says, only needed to show that he regularly traveled in the vicinity of the gas stations, and he made that showing.  For four reasons, I don't join this part of the majority opinion.

First, in its August 23, 2019 sanctions order, the district court did not dismiss Johnson's disabilities act claims for lack of standing.  The word "standing" isn't in the August 23, 2019 sanctions order.  The district court found Johnson's disabilities act claims "objectively frivolous" because "they were not filed for the purpose of obtaining meaningful remediation, but rather for profit."  Nothing about standing.

Second, Johnson didn't show that he regularly traveled in the vicinity of the gas stations.  Johnson testified that he did at the May 9, 2019 hearing, but the district court found this testimony not credible.  Johnson has not appealed the district court's credibility finding.

Third, the majority opinion affirms the sanction of dismissal because Johnson knowingly filed frivolous Florida Civil Rights Act claims and schemed with his attorney to profit by filing disabilities act claims, rather than seeking meaningful relief for the hearing impaired.  Because the majority opinion affirms the sanction of dismissal on these non-standing grounds, we need not and should not decide the standing question.  See BellSouth Telecommunications, Inc. v. Town of Palm Beach, 252 F.3d 1169, 1176 (11th Cir. 2001) (explaining "the longstanding principle that federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided"); Hoffert v. Gen. Motors Corp., 656 F.2d 161, 165 (5th Cir. Unit A Sept. 1981) ("Article III limits the federal judicial power in terms of the power to decide certain classes of 'cases' or 'controversies,' and the cornerstone of this constitutional limitation is that a federal court should decide only those questions necessary for adjudication of the case before it.").

And, fourth, the majority opinion says that Johnson only needed to show that he regularly traveled in the vicinity of the gas stations to establish standing.  But we've held that to establish standing "a plaintiff," like Johnson, "seeking an injunction under Title III either must 'have attempted to return' to the non-compliant building or at least 'intend to do so in the future.'"  Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1336 (11th Cir. 2013) (quoting Shotz v. Cates,

256 F.3d 1077, 1081 (11th Cir. 2001)).  We've applied this standing requirement to all sorts of public accommodations—including supermarkets, courthouses, hotels, hospitals, outlet stores, restaurants, pubs, and automatic teller machines—that are visited as-needed based on convenience, proximity, price, and the mobility of the customer.  See Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1233–34 (11th Cir. 2021) (hotels); McCullum v. Orlando Reg. Healthcare Sys., Inc., 768 F.3d 1135, 1145 (11th Cir. 2014) (hospitals); Houston, 733 F.3d at 1336 (supermarkets); Shotz, 256 F.3d at 1081 (courthouse); Kennedy v. Beachside Commercial Properties, LLC, 732 F. App'x 817, 819 (11th Cir. 2018) (outlet stores); Kennedy v. Solano, 735 F. App'x 653 (11th Cir. 2018) (restaurants); Seiger by and through Seiger v. Philipp, 735 F. App'x 635, 638 (11th Cir. 2018) (pubs); Gomez v. Dade Cnty. Fed. Credit Union, 610 F. App'x 859, 863 (11th Cir. 2015) (ATMs).  Still, we've never tinkered with or watered down the constitutional minimum for standing—and the majority opinion doesn't cite any support for doing so—because of price fluctuations and customer need.

Because (a) the district court's sanctions order did not dismiss Johnson's claims for lack of standing, (b) Johnson's testimony that he regularly traveled in the vicinity of the gas stations was not credible, (c) the dismissal sanction was supported by other non-standing grounds, and (d) footnote seven is in tension with our precedent, I do not join that part of the majority opinion.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 17, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-14353-JJ
Case Style:  Alexander Johnson v. 27th Avenue Caraf, Inc.
District Court Docket No:  1:18-cv-24472-JEM
Secondary Case Number:  1:18-cv-24586-PCH

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tiffany A. Tucker, JJ at (404)335-6193.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs